REQUESTED BY: Senator John W. DeCamp Member of the Legislature State Capitol Lincoln, NE 68509
Dear Senator DeCamp:
In your letter of January 27, 1982, you refer to the decision of the District Court of Lancaster County holding certain sections of LB 284, Laws of 1981, unconstitutional, and suggest that the provisions held invalid are identical or similar to other state aid provisions.
Ordinarily, we could not respond to your questions, since our policy is not to render an opinion to an individual senator on the constitutionality of existing statutes. However, we gather from your letter that you may need the opinion in taking corrective legislative action, either with respect to LB 284 or with respect to the legislation you compare it to. We will therefore answer your questions.
You compare the distribution formula of LB 284 with that of the homestead law, and say, `In fact, the system of distribution of the money is identical to the proposed formula in LB 284 that was declared unconstitutional.' We disagree completely. The formulas are not only not identical, but, in our opinion are not even remotely similar.
In our Opinion No. 78, dated April 14, 1981, we discussed our view as to the validity of LB 284, which based 1982-83 and subsequent fiscal year distributions on the assessed valuation of taxable property in each county. We will not repeat those views herein.
Neb.Rev.Stat. § 77-3523 (Supp. 1980) is a straight reimbursement statute. Each agency in the state is reimbursed the amount of money it lost because of the homestead exemptions allowed in its geographical area. A particular county, or a particular taxing agency within a county, may receive more than some other county or some other taxing agency, but that is because it lost more because of the homestead exemptions. The court requires only that the basis for distribution be rational, and we are of the opinion that this basis is rational.
The amount lost, of course, is based in part upon the amount of homestead exemptions allowed in the particular taxing jurisdiction. The other part of the equation is the size of the mill levy assessed in that taxing area. The homestead exemption itself is authorized by Article VIII, Section 2 of our Constitution, which permits the Legislature to exempt `a portion of the value' of a residence occupied as a homestead. Neb.Rev.Stat. §§ 77-3506 to 77-3509 make various provisions for certain classes of homestead claimants to have varying percentages of their homesteads exempt, with varying dollar ceilings on the values exempted. We believe these provisions are authorized by Article VIII, Section 2, and are completely different from the provisions of LB 284.
Even if we were not faced with the specific authorization found in the Constitution, we would not feel the homestead provisions create the same problems as LB 284. That bill's main problem is that by basing distributions of state aid on assessed valuations it gave the most money to those counties which needed it least. The homestead statutes do not have that vice.
You also state that for a multitude of years state aid to education was based on valuation strictly. You have given us no statutory citations to support that statement, nor have you said whether that is still true. Whether such aid was ever based solely on valuation we do not know, and feel that it would be unproductive labor to do the historical research to find out.
We have, however, examined Chapter 79, Article 13 of the statutes, as amended, with some care. This article deals with a number of sources of aid to public schools, and we have found none basing the distributions on assessed valuations. The closest we have found is provided for by Neb.Rev.Stat. §§ 79-1303 and 79-1304 (Supp. 1980), which provide for distribution of in lieu of tax money to districts containing school lands or saline lands owned by the state. The calculation is made by taking the appraised value of such land and applying to it the levies for school purposes in the various districts. Obviously, this is a rational basis for determining how much each district lost because of the state ownership of such lands, and therefore its entitlement to payment in lieu of taxes.
If you had in mind other state aid to education provisions not provided for in Chapter 79, Article 13, and feel they are comparable to the provisions of LB 284 which we are challenging, please call them to our attention.
You also note that we have raised questions about the validity of past distributions of at least one fund, and ask what our intentions are with respect to recovery of those funds, or the enjoining of current distributions. We are not in a position to make that decision at this time. The district court's decision on LB 284 will, we understand, be appealed to the Supreme Court. After the Supreme Court has spoken we will be in a position to appraise the situation with respect to other funds. We will probably take no further action before that time.
Very truly yours,
PAUL L. DOUGLAS Attorney General
Ralph H. Gillan Assistant Attorney General